IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| ANGELA TRISH,<br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)   Civil No. 3:17cv15 (REP)<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

On October 26, 2012, Angela Lynn Trish ("Plaintiff") applied for Social Security Child's Disability Benefits ("CDB") and for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging a learning disability stemming from her mental impairments, with an alleged onset date of March 7, 1994. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in: (1) awarding only partial weight to the opinion of Elizabeth Hrncir, Ph.D.; (2) failing to account for all of Plaintiff's moderate limitations; and, (3) posing to the VE a hypothetical question that failed to account for all of Plaintiff's limitations. (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 15) at 3, 5, 6.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)

1

on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) and Motion to Remand (ECF No. 14) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On October 26, 2012, Plaintiff filed an application for CDB and an application for SSI. (R. at 78,79.) In both applications, Plaintiff alleged an onset date of March 7, 1994. (R. at 182, 188.) The SSA denied these claims initially on April 2, 2013, and again upon reconsideration on November 13, 2013. (R. at 104, 109, 120, 127.) On September 25, 2015, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that she did not qualify as disabled under the Act. (R. at 27.) On November 25, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-4.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Charter*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes ... a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At

step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual function capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On September 1, 2015, the ALJ held a video hearing during which Plaintiff (represented by counsel), Plaintiff's mother, Terri Morton, and a VE testified. (R. at 32-56.) On September 25, 2015, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 15-27.)

The ALJ followed the five-step evaluation process established by the Act to analyze Plaintiff's disability claim. (R. at 16-26.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 7, 1994. (R. at 17.) At step two, the ALJ found that Plaintiff had the severe impairment of mental retardation. (R. at 17.) At step three, the ALJ found that Plaintiff's impairment did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-20.)

To assess Plaintiff's RFC, the ALJ considered the opinions of the state agency psychologists — Joseph Leizer, Ph.D., and Dr. Stephanie Fearer, Ph.D. — and consultative examiner, Dr. Hrncir; Plaintiff's individualized education program ("IEP"); a psychoeducational evaluation prepared by Mr. Gary Bennett; and, the statements provided by Plaintiff, her mother and her sister. (R. at 22-25.) In assessing Plaintiff's RFC, the ALJ found that she could perform a full range of work at all exertional levels, but with the following non-exertional limitations: she could perform simple, unskilled work on a sustained basis in a competitive work environment with no more than occasional interaction with the general public. (R. at 20.)

At step four, the ALJ found that Plaintiff had no past relevant work. (R. at 25.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 25.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 26.)

## IV. ANALYSIS

Plaintiff, twenty-three years old at the time of this Report and Recommendation, has never held a job. (R. at 58-59.) She applied for Social Security Benefits, alleging disability from a learning disability, with an alleged onset date of March 7, 1994. (R. at 182, 188, 198.) First, Plaintiff's appeal to this Court alleges that the ALJ erred by finding that Dr. Hrncir's opinion deserved only partial weight. (Pl.'s Mem. at 3-5.) Second, Plaintiff argues that the RFC assessment does not include all of her moderate limitations. (Pl.'s Mem. at 5-6.) Finally, Plaintiff argues that the hypothetical that the ALJ posed to the VE failed to account for all of her limitations. (Pl.'s Mem. at 6-9.) Specifically, Plaintiff argues that the hypothetical did not account for her moderate limitations in concentration, persistence or pace, nor her moderate difficulty completing a normal workday and workweek without interruptions and an

5

unreasonable number and length of breaks. (Pl.'s Mem. at 6-9.) For the reasons set forth below, the ALJ did not err in his decision.

### 1. The ALJ Did Not Err in Affording Dr. Hrncir's Opinion Partial Weight.

Plaintiff argues that the ALJ erred in affording Dr. Hrncir's opinion partial weight, because the state disability experts' opinions, Plaintiff's IEP and other school records support that opinion. (Pl.'s Mem. at 3-4.) Defendant responds that the ALJ correctly granted Dr. Hrncir's opinion partial weight, because the cumulative record does not support Dr. Hrncir's single assessment that Plaintiff requires "additional supervision" to fulfill employment. (Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 21) at 13.) Moreover, Defendant asserts that the ALJ accounted for all of Plaintiff's cognitive limitations by restricting her to "simple, unskilled work with no more than occasional interaction with the general public." (Def.'s Mem. at 16.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. 20 C.F.R. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains a number of different medical opinions, including those from the claimant's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. §§ 404.1527(c), 416.927(c). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to analyze properly the evidence involved.

6

§§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Following her examination of Plaintiff, Dr. Hrncir opined that "[Plaintiff] will need additional supervision to complete work activities on a consistent basis, maintain regular attendance in the workplace, and complete a normal workday." (R. at 295.) The ALJ afforded Dr. Hrncir's opinion partial weight, because "although Dr. Hrncir's examination and the other evidence is supportive of a limitation to simple tasks, it is not supportive of a need for additional supervision." (R. at 24.) Moreover, the ALJ found that other evidence in the record, specifically Plaintiff's thorough IEP assessment, contradicted Dr. Hrncir's statement that Plaintiff required additional supervision. (R. at 24.)

Substantial evidence supports the ALJ's determination that Dr. Hrncir's opinion deserved only partial weight. In January 2013, Plaintiff completed a function report and stated that she could maintain her own personal care, prepare her own meals, complete household chores, shop for clothing and accessories, and get along well with authority figures. (R. at 205-12.) In addition, Plaintiff's IEP described her as "an independently functioning young lady. She usually has a smile on her face and is always polite. She knows how to stand up for herself and will be a great self-advocate as she journeys into life beyond high school." (R. at 284.)

The Special Education Department at Plaintiff's high school, through the IEP, recommended that Plaintiff take classes at a local community college and pursue a career. (R. at 284.) The Addendum to Plaintiff's IEP, dated September 2011 through May 2012, stated that Plaintiff "exhibits good work habits," "communicates her wants and needs effectively," "has no behavioral issues," "does not display limited English proficiency" and "does not meet the criteria for extended school year." (R. at 264-65.) Further, Plaintiff's teachers observed that she "did a good job in . . . class and was very good at following directions. She always gave effort on each

7

task and tried to accomplish it to the best of her ability," and "asks questions if she doesn't understand what is being asked of her. She is very cooperative and likes to get things done." (R. at 266.) In response, Plaintiff argues that even if she functioned "independently" in school, such performance does not translate "to function[ing] independently in a competitive workplace." (Pl.'s Mem. at 4.) However, Plaintiff fails to point to sufficient evidence to contradict her substantial IEP assessment and other objective evidence in the record.

On April 2, 2013, Dr. Leizer, one of the state disability experts, reviewed Plaintiff's record and found that she retained the mental ability to "understand, remember, concentrate, persist, interact and adapt to simple job instructions, duties and work relationships, as well as simple routines, schedules, attendance requirements and changes in work setting, with only occasional additional supervision." (R. at 64.) On November 13, 2013, Dr. Fearer, the second state disability expert, reconsidered Plaintiff's claim and reached the same conclusion as Dr. Leizer. (R. at 88-89.) Although the state disability experts recognized that Plaintiff may need "occasional additional supervision," they ultimately concluded that Plaintiff had the ability to perform simple, routine work. (R. at 64, 66, 88-89, 90.) Moreover, the experts qualified that Plaintiff's "condition results in some limitations in [her] ability to perform work related activities but does not prevent [her] from working." (R. at 66, 90.) To that end, as Defendant emphasizes, "every expert to offer an opinion in this case found Plaintiff capable of such work, despite her cognitive limitations." (Def.'s Mem. at 16.)

In sum, Plaintiff's functional disability reports, Plaintiff's IEP and the opinions of state disability experts provide substantial evidence to support the ALJ's assignment of partial weight to Dr. Hrncir's opinion. Thus, the ALJ did not err in his decision.

8

## 2. Substantial Evidence Supports the ALJ's RFC Assessment.

Plaintiff argues that the ALJ's RFC assessment does not properly account for her (1) moderate limitations with concentration, persistence or pace, and (2) moderate limitation in the ability to complete a normal workday and workweek and perform at a consistent pace without an unreasonable number and length of rest periods. (Pl.'s Mem. at 6-10.) To address those limitations, Plaintiff asserts that the ALJ should have found that Plaintiff required "occasional additional supervision" in the RFC. (Pl.'s Mem. at 5-6.) Defendant responds that substantial evidence supports the RFC and the ALJ's decision to exclude any requirement of additional supervision. (Def.'s Mem. 18-25.)

After step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In analyzing a claimant's abilities, an ALJ must first assess the nature and extent of the claimant's physical and mental limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. §§ 404.1545(b)-(c), 416.945(b)-(c). Generally, the claimant bears the responsibility for providing the evidence that the ALJ utilizes in making his RFC determination; however, before determining that a claimant qualifies as disabled, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. §§ 404.1545(a)(3), 416.945(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, and those impairments derived from the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* §§ 404.1545(e), 416.945(e).

The ALJ must conduct a function-by-function analysis in assessing a claimant's RFC, and remand may be appropriate in cases where the ALJ fails to assess a claimant's capacity to

9

perform relevant functions, or where the ALJ's analysis contains inadequacies that frustrate meaningful review. *Mascio*, 780 F.3d at 635-36. The assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts and non-medical evidence, including daily activities and observations. SSR 96-8p.

Here, the ALJ found that Plaintiff possessed the RFC "to perform a full range of work at all exertional levels," and "[d]espite her mental limitations, she retains the ability to perform simple, unskilled work on a sustained basis in a competitive work environment where [there] is no more than occasional interaction with the general public." (R. at 20.) To craft the RFC, the ALJ focused on objective evidence in the record indicating that Plaintiff maintained good work habits, followed instructions and communicated well with others throughout school. (R. at 23.) The ALJ emphasized that Plaintiff's summary of functional performance, incorporated into her IEP, described her as an independent, polite self-advocate, capable of standing up for herself. (R. at 23.) The ALJ noted that the Special Education Department at Plaintiff's high school also recommended, through the IEP, that Plaintiff enroll in classes at a local community college, engage in part-time work and live independently. (R. at 23.) Further, the ALJ found that Plaintiff's alleged "degree of severity . . . lacks support and consistency with the other evidence of record." (R. at 23.) Most notably, the ALJ recognized that Plaintiff required a "limited degree of treatment and accommodation," and that she underwent "relatively benign examinations during the period at issue[.]" (R. at 24.) Ultimately, the ALJ determined that such evidence "belie[s] allegations of disabling symptoms or functional limitations." (R. at 24.)

Substantial evidence supports the RFC assessment. Plaintiff argues that the RFC does not account for her moderate limitations with concentration, persistence or pace and ability to complete a normal workday and workweek. (Pl.'s Mem. at 6-10.) The state medical experts and

10

Dr. Hrncir each found Plaintiff capable of performing simple, unskilled work, despite her moderate limitations with concentration, persistence or pace, and ability to complete a full workday or workweek. (R. at 63-64, 87-90, 292-95.) To account for Plaintiff's moderate limitations with concentration, persistence or pace, Dr. Leizer and Dr. Fearer stated that Plaintiff required "only occasional additional supervision." (R. at 74-75, 99-100.) Dr. Hrncir similarly found that Plaintiff "will need additional supervision to complete work activities on a consistent basis, maintain regular attendance in the workplace, and complete a normal workday." (R. at 295.) Here, the ALJ specifically considered whether Plaintiff required such an accommodation, weighed the evidence in the record and ultimately determined that the record lacked "objective evidence to support why [Plaintiff] needs additional supervision." (R. at 24.)

During the hearing, the VE reasoned that receiving additional help in school, through a special education program, did not translate into a requirement of additional supervision in the workplace. (R. at 52-53.) For example, the VE testified, a student must consistently learn new skills, but with simple, routine work, an individual must only learn a defined set of skills and perform the same tasks on a consistent basis. (R. at 52-53.) Even in school, where the VE recognized that performing consistently presented a more difficult task than in a simple, unskilled job, Plaintiff's teachers remarked that Plaintiff "was an independently functioning young lady" and "complete[d] all assignments/homework, and tests." (R. at 52-53, 284.)

The ALJ also found that the testimony and functional reports submitted by Plaintiff, her mother and her sister lacked credibility given the entire record. (R. at 22.) For example, the ALJ stated that although her mother testified that Plaintiff could not cook without supervision, Plaintiff testified that she never had a problem with fires in the kitchen or leaving the stove on. (R. at 24, 44.) Similarly, although Plaintiff and her family stated that she could not complete

11

tasks around the house, Plaintiff testified that she only needed reminders to finish household chores. (R. at 24, 44.) In her July 26, 2013 function report, Plaintiff reported having trouble following instructions, completing tasks and concentrating, but she had no problem with personal care and prepared sandwiches for herself. (R. at 232-33, 236, 238.) Plaintiff listed "does not apply" in the section provided to discuss completion of house and yard work. (R. at 233.) By contrast, in Plaintiff's January 11, 2013 function report — completed just a few months earlier — Plaintiff stated that she did perform house and yard work, including cleaning, laundry and mowing the lawn. (R. at 207, 212.)

Finally, the ALJ pointed to Plaintiff's "limited" treatment and "relatively benign examinations" to show the lack of evidence supporting Plaintiff's need for additional supervision. (R. at 24.) Accordingly, the ALJ concluded that significant objective evidence in the record demonstrated that Plaintiff retained the capacity to interact and engage independently. (R. at 24.) Despite her moderate limitations with concentration, persistence or pace and her ability to complete a full workday and workweek, each expert that offered an opinion found Plaintiff capable of simple, unskilled work. (R. at 63-64, 87-89, 292-95.) Substantial evidence supports the ALJ's decision.

### 3. The Hypothetical Posed to the VE Properly Accounted for All of Plaintiff's Substantiated Impairments.

Next, Plaintiff takes issue with the hypothetical posed to the VE. Plaintiff argues that, by not including "occasional additional supervision," the ALJ failed to include in the hypothetical Plaintiff's moderate limitations in concentration, persistence or pace, as well as her ability to complete a normal workday and workweek. (Pl.'s Mem. at 6-10.) Defendant maintains that substantial evidence supports the RFC and corresponding hypothetical. (Def.'s Mem. at 18-25.)

12

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant could perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 404.1566, 416.920(g), 416.966. The Commissioner can carry her burden in the final step with the testimony of a VE. §§ 404.1566(e), 416.966(e). During an administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can offer testimony about any jobs existing in the national economy that the claimant could perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Walker*, 889 F.2d at 50.

During the hearing, the ALJ posed multiple hypotheticals to the VE to determine whether, in light of Plaintiff's RFC, jobs existed in the national economy that Plaintiff could perform. (R. at 46-51.) The ALJ's first hypothetical to the VE adequately accounted for all of Plaintiff's substantiated limitations. The ALJ asked the VE about jobs for someone with Plaintiff's age, education, work history and mental limitations who "retains the ability to perform simple, unskilled work on a sustained basis, in the competitive work environment where there's no more than occasional interaction with the general public." (R. at 46-47.) In response, the VE identified three jobs in the national economy that met Plaintiff's needs. (R. at 47-48.) Specifically, the VE testified that Plaintiff could work as a production helper/production worker helper, a kitchen helper/dishwasher and a material handler/mover. (R. at 47-48.)

This hypothetical corresponds to the RFC assessment, which is supported by substantial evidence. First, Plaintiff's IEP consistently recognized that Plaintiff functioned independently, maintained good work habits, strived to complete every task, communicated effectively and

13

followed instructions. (R. at 264, 266, 284.) Second, Plaintiff stated in her function reports that she could maintain her own personal care, prepare sandwiches for herself, shop in stores, watch television and listen to music. (R. at 206-08, 232-35.) Lastly, although Plaintiff alleges an onset date of March 7, 1994 (R. at 182, 188), the only medical examinations or evaluations in the record are the two by the state disability experts, the consultative examination by Dr. Hrncir and Plaintiff's psychoeducational evaluation performed early on in her schooling by Mr. Bennett. (R. at 58-77, 80-101, 278-83, 291-95.) Through an absence of evidence, Plaintiff failed to meet her burden to establish the additional limitations that she alleges.

The second hypothetical question that the ALJ posed to the VE raised the issue of whether Plaintiff required additional supervision. (R. at 48.) The state disability experts opined that Plaintiff required "occasional additional supervision" to combat her moderate limitations with concentration, persistence or pace, in her ability to complete a full workday and workweek, as well as to perform at a consistent pace without unreasonable breaks. (R. at 63-64, 74-75, 87, 89, 98-100.) The consultative examiner also concluded that "[Plaintiff] will need additional supervision to complete work activities on a consistent basis, maintain regular attendance in the workplace, and complete a normal workday." (R. at 295.) The ALJ and VE discussed in depth what the experts likely meant by the undefined term "additional supervision" when reviewing the record as a whole. (R. at 46-51.) The VE testified that if the experts meant ongoing supervision that extended beyond a month of training, then Plaintiff's limitations preclude her from competitive work. (R. at 49.) However, if Plaintiff required less than a month of supervision while training, then the three jobs provided in VE's response to the first hypothetical still represented an accurate picture of work available to her. (R. at 49.)

14

Plaintiff argues that the ALJ erred by not clarifying to the VE that "additional supervision" meant "occasional" supervision, which may means "occurring from very little up to one-third of the time, and . . . generally . . . no more than about 2 hours of an 8-hour workday" under SSR 96-9p. (Pl.'s Mem. at 6.) Defendant responds, correctly, that any confusion surrounding the term "additional supervision" is moot, because the ALJ did not find evidence in the record supporting Plaintiff's need for such an accommodation. (Def.'s Mem. at 16-18; R. at 24.)

The ALJ reasonably concluded that Plaintiff retained the ability to learn and complete the three unskilled jobs contemplated by the VE, because (1) substantial evidence supports the ALJ's conclusion that Plaintiff did not require additional supervision, and (2) even so, these jobs typically take no more than a week to train.[2] (R. at 49.) Moreover, the VE ultimately determined that in this context, additional supervision likely meant support from home to help Plaintiff get to work on a consistent basis, rather than supervision at work. (R. at 50-52.)

Although the state disability experts and consultative examiner recommended additional supervision, all three experts opined that Plaintiff retained the ability to perform simple, routine

---

[2] The Dictionary of Occupational Titles ("DOT") classifies a given job, in part, by its Specific Vocational Preparation Level ("SVP") — which the DOT defines as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information and develop the facility needed for average performance of a particular position. DICTIONARY OF OCCUPATIONAL TITLES, App'x C, 1991 WL 688702 (4th ed. 1991). The VE here testified that Plaintiff could work as a production worker/helper (DOT No. 739.687-098, 1991 WL 680197), a a kitchen helper/dishwasher (DOT No. 318.687-010, 1991 WL 672755) or a material handler/mover (DOT No. 579.687-018, 1991 WL 684160). (R. at 46-48.) A production worker/helper has an SVP of 1, while a kitchen helper/dishwasher and material handler/mover have an SVP of 2. DOT Nos. 318.687-010, 579.687-018, 739.687-098. Jobs with an SVP level of 1 require a "[s]hort demonstration only," while training for jobs with an SVP level of 2 require "[a]nything beyond [a] short demonstration up to and including 1 month." DICTIONARY OF OCCUPATIONAL TITLES, App'x C, 1991 WL 688702.

15

work. (R. at 66, 90, 295.) Consequently, the ALJ proffered a hypothetical question to the VE that sufficiently accounted for Plaintiff's capabilities and demonstrated limitations.

### 4. The ALJ's RFC and Corresponding Hypothetical Satisfied *Mascio*.

Finally, relying on *Mascio*, Plaintiff alleges that the ALJ failed to explain why Plaintiff's moderate difficulties with concentration, persistence or pace did not translate into the RFC and corresponding hypothetical. (Pl.'s Mem. at 7.) Defendant responds that the ALJ complied with *Mascio* by articulating the reasons why Plaintiff's limitations with concentration, persistence or pace did not translate into a need for additional supervision. (Def.'s Mem. at 18-23.)

In *Mascio v. Colvin*, the Fourth Circuit found that the ALJ erred "by ignoring (without explanation) [the claimant's] moderate limitation in her ability to maintain her concentration, persistence, or pace." 780 F.3d at 633. The Fourth Circuit held that an ALJ "cannot account for the limitation in concentration, persistence, or pace simply by limiting the claimant to simple, routine work or to unskilled work." *Id.* at 638. Specifically, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* However, the ALJ may choose not to incorporate an additional limitation into the hypothetical if the ALJ finds that a claimant's moderate limitations do not translate into a limitation in the RFC, and the ALJ explains the reason for this finding. *Id. Mascio* goes on to state that, "the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]." *Id.* However, in *Mascio*, the reviewing court remanded the case, because the ALJ failed to give any such explanation. *Id.* Consequently, *Mascio* emphasized the ALJ's responsibility to

16

weigh the evidence and explain his decision to exclude a claimant's moderate limitations in concentration, persistence or pace from the RFC.

To accommodate Plaintiff's moderate limitations with concentration, persistence or pace and her ability to complete a full workday or workweek, the state agency experts and Dr. Hrncir opined that Plaintiff required "additional supervision" or "occasional additional supervision." (R. at 63-64, 87-89, 292-95.) However, as previously discussed, the ALJ weighed the evidence and found that such a recommendation lacked support from the record. (R. at 24.) Specifically, the ALJ explained that Plaintiff had not received the type of treatment typically experienced by a disabled individual. (R. at 23-24.) For example, the ALJ stated that Plaintiff's IEP indicated that she maintained good work habits in school, put forth effort on each task and tried to accomplish her assignments to the best of her ability. (R. at 23.) In addition, the ALJ emphasized that Plaintiff's summary of functional performance indicated that "she was an independently functioning young lady who was polite and knew how to stand up for herself. It indicated she would be a great self-advocate. It was recommended that [Plaintiff] consider classes at a local community college[.]" (R. at 23.)

In accordance with *Mascio*, the ALJ sufficiently explained why Plaintiff's moderate limitations with concentration, persistence or pace did not translate into her RFC limitations beyond "simple, unskilled work on a sustained basis in a competitive work environment where [there] is no more than occasional interaction with the general public." (R. at 20.) Based on Plaintiff's IEP, inconsistent testimony from Plaintiff, as well as her mother and sister, and Plaintiff's conservative medical treatment, the ALJ found that "[t]here is no objective evidence to support why [Plaintiff] needs additional supervision" to accommodate her moderate limitations with concentration, persistence or pace. (R. at 24.)

17

Accordingly, the ALJ satisfied *Mascio* by including in the RFC and the hypothetical all of Plaintiff's substantiated impairments and explaining why other limitations did not translate into additional restrictions in her RFC.

## CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) and Motion to Remand (ECF No. 14) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the wavier of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: January 26, 2018